STATE OF WEST VIRGINIA

*In re* **Z.N.**

**No. 19-0063** (Taylor County 18-JA-47)

**FILED**

**June 12, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# MEMORANDUM DECISION

Petitioner Mother A.N., by counsel Andrew Tyler Reseter, appeals the Circuit Court of Taylor County's December 12, 2018, order terminating her custodial rights to Z.N.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Allison C. Iapalucci, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. However, the Court finds it necessary to remand this case for the entry of an order terminating petitioner's parental and guardianship rights. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure, and a memorandum decision is appropriate to resolve the issues presented.

In March of 2018, the DHHR filed a child abuse and neglect petition alleging that petitioner abused controlled substances, failed to supervise the child, and failed to protect the child. More specifically, the DHHR alleged that petitioner failed to pick up five-year-old Z.N. from the school bus, and that a neighbor observed petitioner passed out when the neighbor helped the child get home. The DHHR alleged that petitioner abused Suboxone, which she purchased illegally. According to the DHHR, methamphetamine was discovered in petitioner's home during an unannounced home visit, and petitioner admitted to using controlled substances the night before.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner alleges no assignment of error regarding the termination of her parental rights.

Petitioner was arrested, and the DHHR placed the child in the custody of his great-grandparents. Petitioner waived her right to a preliminary hearing.

In July of 2018, the circuit court held an adjudicatory hearing. Petitioner did not appear, but was represented by counsel. The DHHR presented evidence consistent with the petition. Additionally, evidence was presented that the child lived for "most of his life" with his great-grandparents. The great-grandparents testified that petitioner would often drop the child off at their home and then not reappear for days. According to the evidence, petitioner did not provide any financial support for the child during these periods. Accordingly, the circuit court adjudicated the child as an abused child and petitioner as an abusing parent.

The circuit court held the final dispositional hearing in October of 2018, and petitioner was present in person and by counsel. Petitioner moved for a three-month post-adjudicatory improvement period. The circuit court heard evidence from a DHHR worker that petitioner ceased participation in drug screening in May of 2018, and her services, such as supervised visitation and parenting classes, were discontinued due to non-participation thereafter. The worker testified that, during this time, petitioner did not contact her regarding the child. The worker also testified that petitioner briefly participated in an inpatient substance abuse clinic, but left the facility after only three days. Additionally, the worker testified that petitioner missed multiple multidisciplinary team ("MDT") meetings, including the most recent meeting in October of 2018. The child's psychologist submitted a report that recommended the child remain in his current placement to avoid further turmoil in his life. The report, which the circuit court read into the record, provided that petitioner's pattern of leaving the child with his great-grandparents and then suddenly returning for him "made this child uncertain and insecure about his personal and emotional safety and [has] definitely influenced his attachment and contributed greatly to his anxiety." Petitioner presented no evidence.

Ultimately, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected and that continuation in petitioner's custody was contrary to the child's welfare. Further, the circuit court ordered that petitioner have no contact with the child as continued contact would lead to further abuse. On the record, the circuit court terminated petitioner's parental rights. However, in its December 12, 2018, order, the circuit court terminated petitioner's custodial rights only. Petitioner now appeals that order.[3]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there

[3]The father voluntarily relinquished his parental rights in July of 2018. According to the parties, the permanency plan for the child is adoption by his maternal great-grandparents.

is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds that petitioner is entitled to no relief on appeal.

Petitioner argues that the circuit court erred in denying her request for a post-adjudicatory improvement period.[4] In support, petitioner asserts that she participated in MDT meetings, services, drug screening, supervised visitations, and entered a long-term drug treatment program. Petitioner recognizes that, pursuant to West Virginia Code § 49-4-610(2)(B), she was required to "demonstrate[], by clear and convincing evidence, that [she was] likely to fully participate in [an] improvement period" before she could be granted an improvement period and contends that her participation in the listed activities provides ample evidence that she would participate. However, petitioner's argument misrepresents the record on appeal.

Rather, the evidence provides that petitioner ceased participating in services in May of 2018 and did not resume any substantial participation before the October of 2018 dispositional hearing. Contrary to petitioner's assertion, she did not attend multiple MDT meetings, including the October of 2018 meeting held immediately before the dispositional hearing. Additionally, although petitioner began a long-term drug treatment program as she asserts, she left the facility after three days and failed to complete that program or any other long-term drug treatment program. More concerning, the evidence showed that petitioner initially missed scheduled visitations with the child and those visitations were discontinued as she ceased participation in services. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citing *Tiffany Marie S.*, 196 W. Va. at 228 and 237, 470 S.E.2d at 182 and 191; *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 259, 470 S.E.2d 205, 213 (1996)). Testimony further showed that petitioner failed to inquire as to Z.N.'s welfare after visitation ended. Petitioner's apparent lack of interest in the child's welfare and in visiting with the child is a major concern that she does not address in her argument on appeal.

---

[4]Petitioner also argues the DHHR committed reversible error in refusing to recommend to the circuit court that she should be granted an improvement period. However, petitioner cites to no authority to support the notion that the DHHR's recommendations during abuse and neglect proceedings are reviewable on appeal. Rather, regardless of the DHHR's recommendations, "West Virginia law allows *the circuit court* discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) (emphasis added.) Thus, the decision to grant or deny a parent an improvement period rests solely with the circuit court and not with the DHHR. Due to the reasoning more fully explained in this decision, we find that petitioner is entitled to no relief in this regard.

It is clear from the record on appeal that petitioner did not carry her burden of demonstrating that she would fully participate in a post-adjudicatory improvement period. Further, the psychologist's report in this case opines that petitioner's continued attempts for reunification will harm the child and not be in his best interests. We have previously held "[b]oth statutory and case law emphasize that a parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period. Where an improvement period would jeopardize the best interests of the child, for instance, an improvement period will not be granted." *In re: Charity H.*, 215 W. Va. 208, 216, 599 S.E.2d 631, 639 (2004). Here, the psychologist's report described a child tortured by the continual state of change that petitioner created by leaving the child with the great-grandparents with no information as to when or if she would return. The psychologist described the child as "shell shocked" and in disbelief that he would remain in the safety of his great-grandparent's home for any period of time. The psychologist opined that petitioner's actions "made this child uncertain and insecure about his personal and emotional safety" and "contributed greatly to his anxiety." Clearly, this child desperately needed permanency in his life with his great-grandparents and an improvement period for petitioner was not in his best interests. Based upon petitioner's failure to fully participate in services and the child's best interests, we find no error in the circuit court's denial of petitioner's motion for an improvement period.

However, we find that the dispositional order in this case fails to reflect the circuit court's decision on the record as to the final disposition for Z.N. The record of the final dispositional hearing provides that the circuit court found "there is absolutely no likelihood that the instances giving rise to this abuse can be corrected in the foreseeable future." Further, the circuit court stated "it is the order of the court, [petitioner], that your parental rights to this child be terminated and held for naught." Yet, the resultant order terminates petitioner's custodial rights only without any reasoning as to why this less-restrictive disposition was better suited to the child's best interests than termination of petitioner's parental rights.[5] Moreover, petitioner requested a less-restrictive dispositional alternative during the dispositional hearing, and the circuit court denied that motion.[6] Therefore, we find it necessary to remand this case for the entry of an order terminating petitioner's parental and guardianship rights, which is consistent with the circuit court's findings at the dispositional hearing, and will permit fulfillment of the child's adoption consistent with the permanency plan approved below.

---

[5]Interestingly, all parties, petitioner included, assume on appeal that petitioner's parental rights were terminated following the dispositional hearing.

[6]In response to petitioner's motion for termination of her custodial rights only, the circuit court responded:

> [I]t sounds like [petitioner] wants what she's always wanted, [to] keep this child in limbo so she can do what she continues to do, which is use drugs and do nothing. As opposed to making this about the child, she continues to make it about her when she wants some middle ground. . . . This is a young child that needs permanency. And in reviewing this report from [the child's psychologist], [she] says this child has been in turmoil because of [petitioner].

4

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 12, 2018, order is hereby affirmed. However, we also remand this matter to the circuit court for entry of an order terminating petitioner's parental and guardianship rights, which is consistent with its findings during the dispositional hearing. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Affirmed and remanded.

**ISSUED**:  June 12, 2019


**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison